ST. PAUL GASLIGHT COMPANY v. CITY OF ST. PAUL.

November 14, 1899.

Nos. 11,741—(119).

City of St. Paul—Interest upon Cost of Street Gas Lamps.

> Held, under the charter of the St. Paul Gaslight Company (Laws 1856, c. 53), the city of St. Paul is not compelled to pay the gaslight company compensation for street gas lamps which the city is not using to light its streets, and is not by any contract required to continue to use.

Action in the district court for Ramsey county to recover a balance of $1,426.46, together with interest thereon, for interest at the rate of eight per cent. per annum on the cost of gas posts and lamps erected by plaintiff at various times prior to January 1, 1897, in the streets of defendant city in compliance with resolutions of its board of aldermen and common council under the provisions of plaintiff's charter. The case was tried before Bunn, J., who found in favor of plaintiff; and from a judgment entered pursuant to the findings, defendant appealed. Reversed.

James E. Markham, for appellant.

F. W. M. Cutcheon, for respondent.

CANTY, J.

The question involved in this case is whether the St. Paul Gaslight Company is entitled to compensation for street gas lamps, lamp posts, connecting pipes, and gas meters remaining in the streets of St. Paul, which the city ordered the gaslight company to erect, and which, on being so erected, the city used for a time, but is not now using. The charter of the gaslight company provides that it shall furnish and lay these and keep them in repair at its own expense, and that the city shall pay to the gas company, as compensation therefor,

"An interest of eight per cent. per annum on the amount of the sum of the original cost of said street lamps and lamp posts, gas meters and gas pipes, and the cost of laying and erecting the same."

There is no express provision as to how long the city shall pay such compensation, or whether it shall pay the same after it has ceased to use the street lamps, and the question must be decided by the interpretation of several provisions of the charter. The gas-light company was incorporated by Laws 1856, c. 53. The act took effect January 1, 1857, and provides that at the end of 20 years the city shall have the privilege of buying the gas plant, but, if the city shall at that time decline to do so, it may exercise a like option at the end of 20 years more,

"But should the said city not resolve to purchase at either of the times provided herein, then this act shall be in full force for an additional term of ten years from and after the last date mentioned for such sale and purchase and no longer."

The city did not exercise its option at the end of either 20-year period, and so the charter of the gaslight company will continue to January 1, 1907, a period of 50 years. The charter contains the following provisions:

"Sec. 9. That it shall be the duty of the St. Paul Gas Light Company to prosecute the works necessary to the lighting the whole city of St. Paul and suburbs with gas, and to lay their pipes in every and all directions, whenever the board of directors shall be satisfied that the expenses thereon shall be counterbalanced by the income accruing from the sales of gas. It shall also be their duty to put the gas works into successful operation as soon as practicable: provided, that whenever the corporation of the city of St. Paul shall, by resolution of the board of aldermen, direct lamps to be erected and lighted in the streets of the city, the company shall make contract therefor, and furnish and provide, lay, set up and keep in good repair, at their own proper expense and charge, the street posts and lamps, and their pipes and meters, all to be of the best quality of work and material now in use. In consideration whereof, the said corporation of the city shall pay quarterly to the St. Paul Gas Light Company, an interest of eight per cent. per annum on the amount of the sum of the original cost of said street lamps and lamp posts, gas meters and gas pipes, and the cost of laying and erecting the same. But said company shall not be bound to lay every pipe in such places where the proceeds from

the sale of gas light would not be sufficient to defray the expenses of furnishing the same."

"Sec. 14. The corporation of the city of St. Paul and the board of directors of the St. Paul Gas Light Company may contract for and make regulations relating to the lighting of said city with gas, in such manner as may be agreed upon, and they may make generally such contracts in relation to the business of the company as may be beneficial to them and the public."

These are all of the provisions of the charter which we deem it necessary to consider. It will be observed that the clause first above quoted is found in section 9. The charter provides no way in which the city can procure gas to light its streets, except that provided by section 14, under which the city must make a contract, voluntarily entered into by both parties, in order to procure gas for that purpose. The city and the gas company have made such contracts from time to time; some of the contracts covering a period of five years each, and others a period of only one year each. Many things might have occurred which would make it proper that the city should abandon the use of gas for street-lighting purposes in the whole or a particular part of the city. For instance, a suburb of the city within the corporate limits might have been supported by some large factory or other industry which was discontinued, and that part of the city might for that reason have gone to decay, and its population become so reduced as to render it proper and expedient to cease lighting its streets, or such suburb might have been destroyed by fire and never have been rebuilt. Again, it might have become necessary to substitute electricity for gas in lighting the city or a part of it.

It seems to us that it would be unreasonable to hold that if, at the inception of the 50 years which this charter was to run, the city had ordered such street lamps to be erected, had used them 10 years under a contract for lighting the streets, which expired at the end of that time, and then, on account of some such contingency, had ceased to light the streets with gas, the city would be bound to pay such compensation for maintaining and keeping in repair the street lamps, lamp posts, connecting pipes and meters for 40 years more, and to permit them to incumber the streets for that length of time, although the city had not a particle of use for

such street lamps during all of that time. Again, it would be unreasonable to hold that the city council might, under section 9, compel the gas company to erect street lamps, and then, after using them a month or a year, abandon the use of gas for street-lighting purposes, and thereby avoid all liability to pay any other compensation for the erection and use of the street lamps than eight per cent. per annum during such use on the cost of erecting the same.

But we are of the opinion that section 9 does not give the council the right in its discretion to compel the erection of street lamps, regardless of how long the city may use them, and without protecting the gas company by stipulating a length of time during which the city shall use them. Section 9 provides that, whenever the city shall "by resolution of the board of aldermen direct lamps to be erected and lighted in the streets of the city," the gas company shall erect the same and keep them in repair. But, as we have seen, the city has no power under the charter to compel the streets to be lighted, except by making for that purpose a contract, voluntary as to both parties. When making such a contract, the gas company can refuse to contract for lighting any street lamps except those already erected, and, before the city can compel the erection of more lamps, it must first make a contract for lighting them. In making such contract, the gas company· can protect itself by insisting that such contract for lighting such new lamps shall cover a period of time of sufficient length that the eight per cent. per annum to be paid during that time will remunerate the gas company for erecting the lamps.

We are of the opinion that under these circumstances the charter does not require the city to pay such compensation for street lamps which it is not under any contract to use. This, in our opinion, is the more reasonable and proper construction of the provision of the charter, and the one which should be adopted. We therefore hold that the city is not liable for such compensation for street lamps after it has ceased the use of the same, and abandoned the use of gas in lighting its streets.

The claim of respondent that there has been by both parties a practical construction of the charter which binds the city to pay such compensation for street lamps which it is not using, is unten-

able.    Neither can we hold that any of the contracts made between the parties under section 14 bind the city to pay such compensation for street lamps not in use.

The judgment is reversed, and a new trial granted.

On November 27, 1899, the following order was made:

PER CURIAM.

Upon the stipulation of the parties hereto in open court it is ordered that the order heretofore made herein be, and it is hereby, modified so as to read as follows:

Ordered, that the judgment appealed from be reversed, and that final judgment be entered in this court for the defendant, but without prejudice to the plaintiff's right to apply to the court for a reargument.