ST. PAUL GASLIGHT COMPANY. v. CITY OF ST. PAUL.[1]

March 11, 1904.

Nos. 13,639—(109).

**Construction of Statute—Street Lights.**

> Section 9, c. 53, p. 87, Laws 1856, prescribing the terms of compensation to be made the St. Paul Gaslight Company for the erection and maintenance of lamps for lighting the public streets of the city, construed, and *held* to impose an obligation to pay each year eight per cent. of the cost thereof by the company during the time such lamps should be in actual service. St. Paul Gaslight Co. v. City of St. Paul, 78 Minn. 39, considered and distinguished.

Appeal by defendant from a judgment of the district court for Ramsey county in favor of plaintiff for $12,216.87, entered pursuant to the findings and order of Brill, J. Affirmed.

*J. C. Michael,* for appellant.
*How, Taylor & Mitchell,* for respondent.

LOVELY, J.

The St. Paul Gaslight Company in this action seeks to recover upon an asserted obligation of the city to pay interest at eight per cent. per annum on the cost of the erection of lamps, posts, and equipments which were constructed and maintained by the company for the municipality, and in use from July 1, 1899, to December 31, 1901, under contracts for lighting the streets and public grounds therein. The liability of the city for such rental claim is denied. The cause was tried to the court, who made findings in favor of the plaintiff, and ordered judgment for the amount claimed in the complaint, which was entered. Defendant appeals therefrom.

There is no conflict in the testimony. The number of lamps, and cost thereof, as found by the court, are not disputed, nor is it denied that the lamps and equipments were installed in conformity with the requirement of the municipality, and it was admitted that they were in service

1 Reported in 98 N. W. 868.

and kept in repair by plaintiff during the period involved in this action; but the claim is made that the responsibility of the city to pay an eight per cent. annual rental rests, so far as the larger number thereof is concerned, on the terms of specific contracts made between the city and the company for that purpose, rather than upon alleged charter obligations.

St. Paul was organized as a city in 1854. In 1856 the legislature of the then territory of Minnesota incorporated the St. Paul Gaslight Company, whereby it was authorized, whenever the city of St. Paul should direct street lamps to be erected and equipped for lighting the streets therein with gas, to receive as compensation for the use of the lamps, and their maintenance in repair, an interest rental upon the expenses incurred in such construction each year. The material provisions of the plaintiff's charter (Laws 1856, p. 87, c. 53) in this respect are as follows:

"Sec. 9. It shall be the duty of the St. Paul Gaslight Company to prosecute the works necessary to the lighting the whole city and suburbs with gas, and to lay their pipes in every and all directions. * * * It shall also be their duty to put the gas works into successful operation as soon as practicable: provided, that whenever the corporation of the city of St. Paul shall, by resolution of the board of aldermen, direct lamps to be erected and lighted in the streets of the city, the company shall make contract therefor, and furnish and provide, lay, set up and keep in good repair, at their own proper expense and charge, the street posts and lamps, and their pipes and meters, all to be of the best quality of work and material now in use. In consideration whereof, the said corporation of the city shall pay quarterly to the St. Paul Gaslight Company, an interest of eight per cent. per annum on the amount of the sum of the original cost of said street lamps and lamp posts, gas meters and gas pipes and the cost of laying and erecting the same. * * *"

Section 14 provides that the corporation of the city of St. Paul and the board of directors of the St. Paul Gaslight Company may contract for and make regulations relating to the lighting of said city with gas, in such manner as may be agreed

upon, and they may make generally such contracts in relation to the business of the company as may be beneficial to them and the public.

Under this act the city of St. Paul might, after twenty years, purchase the gasworks from the company under terms and conditions therein prescribed. There is a further provision that twenty years thereafter the city might again purchase the plant. Should the city not resolve to purchase at either of these periods, the act should be in force for such purchase and sale for ten years thereafter, making the rights of the parties continuous and operative in this respect for fifty years.

Under the facts found by the trial court, it appears that, while plaintiff was constructing its gasworks, it sent a communication to the board of aldermen, stating that it had purchased and had on hand one hundred fifty gas lamps and posts for the use of defendant; requesting the board to designate the places where the same should be located. A resolution was adopted in 1867 by the governing body of the city requiring the lamps to be divided between the three wards therein, and that they be located under the direction of the street commissioner of each ward. In the following year the plaintiff erected these posts and lamps, connected the same with its mains, and, as soon as the gasworks were completed, commenced and continued thereafter to furnish the necessary lighting for the streets where the lamps were placed, and thereafter from time to time entered into written contracts with the municipality, each embracing a definite period, under the terms of which plaintiff agreed, at fixed prices, to furnish gas and light the lamps already installed, and such others as might be required and directed by the city; also to supply such additional posts and lamps to light other streets and public grounds of the city, under direction of the board of aldermen or common council. In pursuance thereof, the plaintiff, as found by the court, put in additional posts, lamps, and equipments in other streets, and maintained and lighted the same from time to time, aggregating several thousand in number, during the period here involved. All of these lamps were of the best quality, workmanship, and material at the time when erected, were maintained in proper repair, and used in lighting the public streets.

Between the year 1857, when the company commenced furnishing gas for the city, and the year 1897, the parties entered into contracts (eight

in number) for the lighting of the streets, some for five years and others for one year. Every one of these contracts contained an express affirmation on the part of the defendant of its obligation to pay the plaintiff interest on the original cost of such posts, lamps, and equipments, as well as the cost of laying and erecting the same in accordance with the provisions of section 9 of the charter, before referred to. Defendant paid plaintiff such interest as rental for lamps maintained by the company for the benefit of the city for more than forty years.

In 1897 a contract between the company and the city was entered into, whereby the former agreed to light the city streets for a definite period of time, less than a year. This contract does not expressly agree to pay the interest rental on the lamps installed, and other contracts were thereafter entered into between the city and the company, covering the time involved in this action, in which a different rental for the use of the lamps then designated in the charter was to be paid; but it was. expressly agreed in each of these contracts, as well as in that of 1897, that none of the provisions therein were to be construed to waive or modify in any way the claim of plaintiff that defendant was under obligation to pay the eight per cent. rental, according to the provisions of section 9 of plaintiff's charter.

The trial court found that between two and three thousand lamps,. varying in number during the different years involved in this suit, were furnished, maintained, and lighted by the plaintiff for the city under its direction, and, as a matter of law, that the defendant was obligated to pay the eight per cent. rental thereon as computed during that period. This conclusion is based upon the view that by the express terms of the charter, and the expenditures of the company to comply with the requirements of the city, which were accepted, the latter thereby assumed a contract liability to pay the eight per cent. rental interest provided for in the charter for all lamps actually in service. This has. been continually recognized, and has been intended to be made effective in every contract adopted on this subject by the parties. It cannot be doubted that it was within the authority given by the legislature to the city to accept the terms of this charter, and to bind itself to comply with the conditions therein specified; and, while the gas company might have waived such obligation, it has not done so, but has insisted at all times that it was in force, and received benefits and advantages.

resting upon express claims of the plaintiff 'that the eight per cent. clause was in force, which it declined, in that respect, to abrogate or modify.

Defendant, however, urges, as we apprehend its position, that the terms of section 9 of the charter, which requires that the lamps be placed when by resolution of the city the company is directed to install the same, contemplate a compulsory demand, such as was made with reference to the first installation of lamps under the resolution of the board of aldermen designating their location, but that the subsequent lamps furnished under other contracts were voluntarily installed by the company, and not dependent upon the charter; hence that these contracts do not distinctively require payment of the interest rental in the charter.

But it seems reasonably clear, from the course pursued through the several contracts to effectuate the mutual obligations of the parties, that the terms of section 9, supra, as to the interest rental, were recognized as, and intended to be and remain, the permanent and reliable expression of rights, by which each must abide; and the fact that in these contracts the company acknowledged its duty, and proposed to perform the same, would not relieve it of existing liabilities, nor establish new and independent burdens. While a new contract, relieving the city from the imposition of the charter, might have been made, it is sufficient to say that this was not done, and the acknowledgment of the binding force of the legislative compact has remained operative during the whole time; hence the fact that agreements were executed by the proper authorities and the payments made under them, presumably through the usual and appropriate channels for liquidating municipal obligations, plainly leads to the conclusion that the duties therein provided for were performed, within the purview of chartered requirements and directions. The terms of the contracts, in connection with the proof that they have been complied with, are sufficient to show that the charter obligation was insisted upon and fulfilled; hence the court was justified in adopting the necessary inferences that follow from their execution, and compliance therewith by the city.

It is further insisted that, notwithstanding the provisions of the company's charter, it went no further than to provide, in effect, that contracts might be entered into between the company and the city, which

must therein regulate the rental charge during the life of the charter—
in other words, that, before the interest charge could be made effective,
it must be executed through a subsequent contract, either recognizing
the same, or providing for some other compensation, to be agreed
upon.   The action of the city authorities in accepting the charter, the
expenditures of the company to comply with such acceptance, as well as
the continued affirmation of the rights to recover the specified sum in
the charter for forty years, thus clearly became a matter of asserted
and enforceable liability; and any attempt to change the same by con-
struction would amount to nothing less than an impairment of contract
obligations.   While it is true that the exclusive rights secured to the
company by the charter may require a strict construction of its terms,
yet no construction is consistent which ignores the rights of one of the
parties to a plainly expressed obligation, as here, because, in the future
growth and progress of the city, the burdens imposed become more
onerous and burdensome than anticipated.   Courts cannot make con-
tracts for parties where they have legally adopted them.   And it seems
to us very clear that the city, by using, accepting, and receiving the
benefit of the lamps, requiring continual repair and maintenance by the
company, authorized the compensation provided for by the terms of the
charter.

We are unable to adopt the view that the charter interferes with the
rights of the municipality to local government.   Clearly the city could
not require the company to erect and maintain its lamps without com-
pensation.   It had a right, with the consent of and under legislative
authority, to enter into arrangements for street lighting, which is un-
questionably a municipal benefit; and any argument based upon present
conditions, rather than facts existing at the time the charter was accept-
ed, would be an impairment of constitutional sanctions.   The city can
make contracts, as in this case, for necessary public service, when such
power is demanded; and the objection that the municipality does not
control subsidiary details only affects the question of time, and not the
power of control.

In the previous decision (St. Paul Gaslight Co. v. City of St. Paul, 78
Minn. 39, 80 N. W. 774, 877) it was held, substantially, that a necessary
construction of the charter required us to hold that where the city had
ceased to use any of the lamps, and they were not kept in service, the

interest rental charge thereon did not continue after the time of abandonment, upon the ground that it was within the contemplation of the charter obligation that the liability to pay such rental presupposes the actual use of the lamps for lighting purposes; and the rule of strict construction was extended to its limit, to hold that such abandonment might be essential and necessary to urban growth and progress; therefore that a reasonable interpretation of the terms of the charter contract was subject to this view. While some expressions in the opinion with reference to the necessity of lighting contracts in that case, standing alone, might support the claim that the right of the company to compensation was dependent upon a distinct agreement subsequent to the charter, yet such were not necessary to the decision of the case, nor do they indicate the substantial and determinative grounds upon which the court rested its judgment.

A just, legal, and intelligent construction of the charter involved, upon the facts found by the trial court, requires us to hold that plaintiff is entitled to the specified compensation expressed therein so long as the city has had the service of the lamps, and has required the plaintiff to maintain them for its use, within the life of the charter.

Judgment affirmed.